IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



TIMOTHY LEE COLES,

    Plaintiff,

v.                        Civil Action No. 3:12CV01

HAROLD CLARKE, et al.,

    Defendants.

**MEMORANDUM OPINION**

Timothy Lee Coles, a Virginia prisoner proceeding pro se, filed this 42 U.S.C. § 1983[1] action. The matter is before the Court on the Motion to Dismiss filed by the defendants[2] named in the Particularized Complaint and on a series of non-dispositive motions filed by the parties. For the reasons that follow the Court will Court will grant the Motion to Dismiss.

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court identifies the individual defendants in conjunction with the discussion of the allegations and claims in the Particularized Complaint. See infra Part II.

## I. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard

2

with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

In 2011, Coles was incarcerated in Sussex II State Prison ("SIISP"). (Part. Compl. 1-2.)[3] SIISP is a "Level IV maximum security prison." (Id. ¶ 10.) On August 4, 2011, Anton Daniels, the Correctional Institutional Rehabilitation Counselor at SIISP, conducted a reclassification review of Coles. (Id. ¶¶ 1-2.) "[D]ue to plaintiff being (12) months charge free, he was eligible and suitable for a security level reduction" and possibly a transfer to a "Level I [s]ecurity facility (minimum security for non-violent offenders) . . . ." (Id. ¶ 2.) Nevertheless, following a hearing conducted on August 10, 2011, A. Daniels and Roy Clary[4] "arbitrarily . . . recommended" that Coles remain at SIISP. (Id. ¶¶ 3, 5.) Marie Vargo, then the Assistant Warden of SSIIP, approved that recommendation. (Id. ¶¶ 1, 6-7.)

Coles then filed an inmate grievance challenging the refusal to reassign him to a lower security level prison. (Id. ¶ 7.) Prison officials, including Harold Clarke, Gail Jones,

---

[3] Because Coles's original complaint failed to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rested, by Memorandum Order entered on July 2, 2013, the Court directed Coles to file a particularized complaint. On July 22, 2013, Coles filed his Particularized Complaint (ECF No. 44), however, the Particularized Complaint only marginally improved the deficiencies of the original complaint.

[4] In 2011, Clary served as the "Unit Manager of #3 Building" at SIISP. (Part. Compl. ¶ 1.)

4

Gary Bass,[5] and Wendy Hobbs either denied his grievance and/or failed to take favorable action on his appeal from the denial of the grievance. (Id. ¶¶ 7-9.) Therefore, Coles remained at SSIIP. (Id. ¶ 11.)

On December 8, 2011, at 5:15 p.m., Coles was using a urinal at SIISP when fellow inmate D. Thomas, who is a gang member, assaulted Coles. (Id. ¶ 11.) Coles "was nearly beaten into a coma due to it was said and reported that plaintiff was a 'snitch' and such labeling had been disseminated throughout the SIISP's compound." (Id.)[6]

Following the assault, Coles "was taken to the Medical College of Virginia (MCV), Richmond[,] Virginia where plaintiff was x-rayed, stitched up[,] and scheduled for plastic surgery due to plaintiff[']s left eye socket, left cheekbone, and the

---

[5] Harold Clarke is the Director of the Virginia Department of Corrections ("VDOC"). (Part. Compl. ¶ 1.) In 2011, Gary Bass served as Chief of Operations of the Central Classification Services of the VDOC, and Wendy Hobbs served as the Eastern Regional Director of the VDOC. (Id.)

[6] Coles alleges that he "was talked about being a 'snitch' throughout the compound of SIISP due his consistencies [sic] of filing numerous . . . complaints, grievances, civil suits, and criminal complaints on the SIISP's prison officials and administrative staffs . . . ." (Part. Compl. ¶ 4 (capitalization corrected).) Coles is far from clear as to who labeled him a snitch. His choice of language suggests this was a label applied by inmates "throughout the compound of SIISP" to Coles. (Id.) Coles fails to allege facts that plausibly suggest that any of the named Defendants labeled Coles a snitch as a means of retaliating against him for litigious propensities. Nor does Coles allege facts that plausibly indicate Defendants realized that inmates described Coles as a snitch.

5

cradle of the left side of plaintiff's nose was fractured severely." (Id. ¶ 12.) Shortly thereafter, Coles returned to SIISP. (Id. ¶ 13.)

Upon his return to SIISP, prison officials initially placed Coles in the infirmary. (Id.) On December 11, 2011, prison officials moved Coles from the infirmary to a segregation unit. (Id.) On December 13, 2011, Roy Clary told Coles "that he would be released back to [the] General Population . . . ." (Id.) Coles told Clary he feared for his safety in general population. (Id.) Clary told Coles that Coles would be charged with an institutional infraction if he refused to return to the general population. (Id.)

Coles names the following individuals as defendants: Clarke, Bass, Hobbs, Clary, Vargo, and Daniels (collectively "Defendants"). (Id. ¶ 1.)[7] Coles contends Defendants violated his rights under the Eighth Amendment[8] by continuing to house him at SIISP after August 4, 2011. (Id. at 6.) Coles contends that Defendants are liable "for the brutal aggravated assault by Offender D. Thomas" because they kept him at "the hostile[,]

---

[7] Although Coles mentions David B. Everett, the Corrections Operations Officer, at end of his Particularized Complaint, he fails to list him as a defendant in the first paragraph of the Particularized Complaint as required by the July 2, 2013 Memorandum Order.

[8] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

6

volatile environment of SIISP . . . . after being talked about as being a 'snitch' throughout the SIISP's compound." (Id. at 6-7.) Coles demands $500,000.00. (Id. at 7.)[9]

### III. ANALYSIS

It is clear that the Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)).[10] Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. See id. at 834. The Supreme Court emphasized that it is conscious disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

---

[9] On August 16, 2012, the Court received notice from Coles that the VDOC had moved him from SIISP to Green-Rock Correctional Center. (ECF No. 25, at 1.)

[10] The Court's analysis borrows heavily from the decision in Bond v. Story, No. 3:09cv147, 2011 WL 5599390, at *3-4 (E.D. Va. Nov. 17, 2011).

7

Id. at 837. Thus, Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837); Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997)).

In Farmer, the Supreme Court of the United States did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. However, it is understood that, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." Riccardo v. Rausch, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates . . . ." Westmoreland v. Brown, 883 F. Supp. 67, 74 (E.D. Va. 1995). Accordingly, that risk does not support an Eighth Amendment claim. See Grieveson v. Anderson, 538 F.3d 763, 776-77 (7th Cir. 2008).

The Motion to Dismiss turns on whether Coles alleges facts that plausibly indicate that Defendants knew of a substantial risk of assault to Coles. The courts have found prison officials to be actually aware of a sufficiently substantial

8

risk of assault "where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." Whaley v. Erickson, 339 F. App'x 619, 622 (7th Cir. 2009) (citing Brown v. Budz, 398 F.3d 904, 914-15 (7th Cir. 2005)). Coles alleges no such facts.

Additionally, an inmate may satisfy the deliberate indifference standard by alleging facts that indicate "the risk of serious harm [is] substantial even though the precise victim or assailant [is] not ascertainable." Westmoreland, 883 F. Supp. at 75. For example, a constitutionally significant risk of assault exists if "'rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their beds and spend the night clinging to the bars nearest the guard station.'" Id. (alteration and omission in original) (quoting Farmer, 511 U.S. at 843-44). Nevertheless, "as the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases." Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted).

Coles grounds his contention that Defendants acted with deliberate indifference on the fact that: (1) they kept him at SIISP "surrounded by offenders who[ ] are hardened and violent criminals with long . . . sentences" (Part. Compl. ¶ 4 (spelling

9

corrected)) and (2) that inmates had labeled Coles as a snitch. (Id.) Coles's first contention alleges merely that there was a risk of assault because the inmates with whom he was housed had been convicted of violent crimes. That does not support an Eighth Amendment claim. See Grieveson, 538 F.3d at 776-77. Moreover, Coles has not plausibly alleged any facts indicating that inmates at SIISP faced any significant risk of assault by other prisoners. Pinkston v. Madry, 440 F.3d 879, 889 (7th Cir. 2006) (alteration in original; internal quotation marks omitted) (observing that "[i]n order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a strong likelihood rather than a mere possibility that violence will occur"); Westmoreland, 883 F. Supp. at 76 ("The fact that there were as many as 2.5 reported assaults per day in January does not permit a conclusion that each of the more than 1300 inmates was subjected to constitutionally prohibited substantial risk of harm solely by virtue of his incarceration in the City Jail.")

Nor does the allegation that someone had labeled Coles as a snitch support an inference that Defendants acted with deliberate indifference because Coles does not allege facts that would permit a reasonable inference that Defendants knew that inmates at SIISP deemed Coles to be a snitch. See Grieveson, 538 F.3d at 775-76 (dismissing claim where prison officials were

10

not aware that the plaintiff "was perceived as a snitch by his fellow inmates"). More importantly, Coles states that he obtained his label as a snitch for harassing prison officials, rather than snitching on other inmates. (Part. Compl. ¶ 4.) Under those circumstances, even if Defendants knew that the inmates at SIISP referred to Coles as a snitch, Defendants would have little reason to believe Coles's fellow inmates bore him ill will for harassing prison officials.

Because Coles has failed to allege facts that plausibly suggest Defendants acted with deliberate indifference, the Motion to Dismiss (ECF No. 64) will be granted.

## IV. OUTSTANDING MOTIONS

Because the Defendants have been served, Coles's Motion to Reconsider Request to Serve Summonses (ECF No. 59) will be denied as moot.

Coles has moved for a preliminary injunction to gain greater access to the prison law library. The motion for a preliminary injunction (ECF No. 61) will be denied without prejudice to Coles's ability to seek injunctive relief by pursuing a separate civil action.

The parties' outstanding motions seeking or opposing discovery (ECF Nos. 69, 70, 72, 76, 79, 83) will be denied as moot.[11] The action will be dismissed.

The Clerk is directed to send a copy of the Memorandum Opinion to Coles and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 12, 2014

---

[11] Coles fails to demonstrate that the discovery he seeks is necessary to resist the Motion to Dismiss.

12